FOURNET, Justice.
 

 William L. Posey, having by attachment proceedings obtained a judgment, in rem, in the Eleventh judicial district court, in and'.
 
 *125
 
 for the parish of Sabine, against George K. Fargo and Edward F. Hoeft, nonresident defendants, and having levied on the judgment, caused an alias writ of fieri facias to issue, addressed to the sheriff of the parish of East Baton Rouge, and, under that writ, he instituted garnishment proceedings in the district court for that parish, wherein the Standard Oil Company of Louisiana, which he claimed was indebted to the defendants, was made a party garnishee.
 

 The garnishee, in answer to the interrogatories propounded to it, set forth that it did' not have any money, rights, or credits due or belonging to the defendants or either of them, but that it did have in its hands the sum of $1851.45, in which they might have an equitable interest, the exact' extent of which was unknown to it; that the amount was not due and payable because the stated amount was for oil produced' under an agreement providing that it “may retain the purchase price of the oil, * * * until satisfactory evidence of title, * * * is furnished * * * ”; and that there were outstanding against the fund certain oil rights and liens filed of record in the parish of Sabine, in the names of: (1) T. E. Nicholson, (2) the Pelican Refining Company, (3) E. A. Lafitte, (4) Thomas Moran, (5). O. C. Gaunce, and (6) R. P. Bartlett, who was granted letters as receiver by the district court of Sabine parish for the partnership of George K. Fargo and Edward F. Hoeft, who claimed the entire sum of $1,851.45.
 

 The trial judge, having maintained an exception of nonjoinder of parties defendant filed by the garnishee to plaintiff’s motion and rule to show cause why it should not be condemned to pay the plaintiff’s claim out of the proceeds in its hands, ordered the plaintiff to amend his petition and make all parties at interest parties to the proceedings, which the plaintiff did by a supplemental and amended petition.
 

 In answer to the supplemental petition, the garnishee answered and- averred that all parties having an interest in the funds being before the court, it wished to, and, accordingly, was allowed to, deposit the sum of $1,851.45 in the registry of the court, to be paid by the court to the proper party or parties.
 

 The receiver waived any objection to the jurisdiction of the court and answered, averring that the amount due by the garnishee was for oil produced by Fargo and Hoeft, as partners, who were jointly engaged in oil operations, and, consequently, the oil sold to the garnishee was a partnership asset which should be turned over to him. He also pleaded that the plaintiff had notice of the receivership and, therefore, was estopped to question the validity of the receivership proceedings, or to contest his rights to the fund.
 

 The other claimants, with the exception of E. A. Lafitte and O. C. Gaunce who did not answer, although the latter was represented in court by counsel, answered asserting their respective claims and joined the receiver in his plea of estoppel, and averred that the funds should be paid over to the receiver to be by him distributed according to law among the creditors of the partnership.
 

 
 *127
 
 After the trial on the merits, the trial judge ordered the sum of $1,851.45, deposited in the registry of the court, paid over to the receiver, R. P. Bartlett. The plaintiff and O. C. Gaunce each appealed from the judgment to the Court of Appeal, First Circuit, which affirmed the judgment of the lower court. 170'So. 512.
 

 The.matter is now before us for review on writs of certiorari granted to each appellant.
 

 The facts, as disclosed by the record', are that George K. Fargo, by a series of conveyances, acquired an undivided one-half interest of a mineral lease on land situated in the parish of Sabine, state of Louisiana, and Edward F. Hoeft, by another series of conveyances, acquired the other undivided one-half of the lease. The two together drilled an oil well on the property covered by the lease, and as a result thereof oil was discovered and produced.
 

 William L. Posey, the plaintiff and one of the appellants in this case, filed a suit in the parish of Sabine against George K. Fargo and' Edward F. Hoeft to recover the sum of $1,389.92, due him for material furnished and labor performed in the building of a rig to drill on the leased property, and, as they were nonresidents, plaintiff caused a writ of attachment to issue against the above-mentioned lease, together with the oil well and equipment, all of which were adjudicated for the sum of $600 to the plaintiff at the sale of the property after final judgment had been rendered in his favor recognizing the attachment and his lien on the property attached, and ordering the same sold. After the cdurt costs were paid there remained' from the proceeds of the sale' $69.37, which was credited on the amount of the judgment.
 

 In the meantime, however, while plaintiffs attachment proceedings were pending and prior to the rendition of the judgment, R. P. Bartlett brought suit in the same court, alleging that George K. Fargo and Edward F. Hoeft were operating as partners on the leased property above referred to; that the affairs of the partnership were financially involved; and that it was necessary for a receiver to be appointed to manage its affairs.
 

 The defendants, George K. Fargo and Edward F. Hoeft, appeared and in their answer admitted the allegations of Bartlett’s petition and, on the same day, Bartlett was appointed receiver. Subsequently, Bartlett, as receiver, obtained an order of court, ordering the sheriff of Sabine parish to deliver to him, as receiver, possession of the property held by the sheriff, under plaintiff’s writ of attachment, in order that he might manage and operate the same, subject, however, to all of plaintiff’s rights under the attachment. '
 

 The record also shows that the oil produced from the well, some prior and some subsequent to the attachment, was sold by the receiver to the Standard Oil Company of 'Louisiana, which, after paying all the royalties out of the proceeds of the sale, owed therefor the sum of $1,851.45, but it declined to pay the same to the receiver because it claimed that there were outstanding against the funds the aforementioned claims and liens filed' of record in the parish of Sabine.
 

 
 *129
 
 Thereafter, upon petition of the receiver to the district court for Sabine parish, the Standard Oil Company and all the parties claiming any interest in the said funds, including the plaintiff Posey, were made parties to a rule to show cause why the Standard Oil Company should not be authorized and directed to pay over to him, in his capacity as receiver, the amount due by it to the partnership.
 

 The Standard Oil Company excepted to the jurisdiction of the court of Sabine parish. The plaintiff herein joined the Standard Oil Company in its plea to the jurisdiction of the court and also filed an answer in which it joined that company in its refusal to turn over the funds to the receiver.
 

 All the other parties defendant in the rule appeared and' pleaded according to their respective interests.
 

 The lower court maintained the plea to the jurisdiction as to the defendant in rule, Standard Oil Company. On the day following the court’s ruling, the plaintiff Posey obtained an alias writ of fieri facias addressed to the sheriff of East Baton Rouge parish and instituted the garnishment proceedings which are under consideration here.
 

 It is argued in behalf of the appellant Posey’s right to the funds: (1) That there is no authority for the appointment by the court of a receiver for a partnership at the suit of one of its creditors when the partnership has not been dissolved; (2) that, in fact, there was no partnership between Fargo and Hoeft; and (3) that, if there was a partnership, he is entitled to have the funds in controversy turned over to him, on the ground that he, having attached and seized the lease under which the oil was produced and sold to the garnishee, as the seizing creditor, is entitled to have all the proceeds of the sale of the oil produced, from the date of the levy under the seizure to the date of the sale, applied towards the payment of his claim.
 

 “It is perfectly settled, not only by the teachings of all text-writers, but also by the unanimous jurisprudence of courts, that a partnership may be created by construction of law, as to third persons, although neither intended', nor actually existing, as between the parties themselves.” City ’ of New Orleans v. Gauthreaux, 32 La.Ann. 1126. We are, therefore, of the opinion that the Court of Appeal properly held that a joint venture in drilling and bringing in an oil well was an ordinary partnership within the meaning and contemplation of article 2826 of the Revised Civil Code.
 

 “Wherever the Court has jurisdiction of the subject matter and of the» necessary parties, its action in regard to the appointment of a receiver, whether erroneous or not, cannot be questioned in a collateral proceeding. Where an order of appointment has not been vacated or reversed, and it is binding upon the defendant, it cannot be collaterally attacked by him, the receiver, or a third person, such as a debtor or defendant.” Corpus Juris, vol. 53, § 101, page g2. “ * * * The fact that a receiver, is appointed by a consent decree does not render his authority subject to collateral attack in another jurisdiction. * * * ” 23 Ruling Case Law, § 44, p. 44. See, also, City of New Orleans v. Gauthreaux, supra;
 
 *131
 
 State ex rel. Remington Paper Co. v. Ellis, 45 La.Ann. 1418, 14 So. 308.
 

 While it is true that prior to the adoption of the Constitution of 1898 there was no statutory or constitutional provision in our state for the appointment of either receivers or liquidators to corporations and partnerships, nevertheless, “our courts * * * have, in aid of their jurisdiction, and as warranted by the exigencies of cases, adopted and established the practice of appointing receivers.” In re Moss Cigar Co., 50 La.Ann.
 
 789,
 
 23 So. 544, 546.
 

 Subsequent to the adoption of the Constitution of 1898, in the case of State ex rel. Dauphin v. Ellis, 108 La. 521, 32 So. 335, 342, it was held that:
 

 “In view, no doubt, of this jurisprudence, the condition, of affairs with regard to the appointment of receivers for corporations and partnerships was considered unsatisfactory, and the framers of the present constitution deemed it advisable to place the authority of the district courts * * * beyond further controversy, by distinctly vesting them with jurisdiction to make such appointments.”
 

 This court, in the case of In re Mitchell-Borne Construction Co., 134 La. 518, 64 So. 397, 398, had for consideration the identical question presented here by argument of counsel for appellant Posey, i. e., whether the court, in the absence of definite statutory authority, could appoint a receiver for a partnership and authorize the receiver to carry out an obligation of the partnership, and in disposing of the issue, said:
 

 “It has been held that the appointment of a receiver or liquidator to a partnership is left in a great measure to the sound discretion of the court. * * *
 

 “Articles 109 and 133 of the Constitution of 1898 provide that district courts shall have jurisdiction ‘of all proceedings for the appointment of receivers or liquidators to corporations or partnerships.’ By Act 159 of 1898, the Legislature provided rules for the appointment of receivers to corporations, but has not as yet provided rules for the appointment of receivers or liquidators to partnerships.
 
 In the absence of definite rules, the courts seem to have followed the equity practice relating to the appointment of receivers to partnerships.
 
 * * *
 

 “In the case at bar the only valuable asset of the partnership appears to be its contract with the sewerage and water board, and the carrying out of such contract by the receiver may be necessary to prevent its dissolution for nonperformance.” (Italics ours.)
 

 In the Constitution of 1921, treating of district courts, it is provided' that: “They shall have
 
 unlimited
 
 and exclusive original jurisdiction in all * * * proceedings for the appointment of receivers or liquidators to corporations or partnerships.’ Article 7, § 35. (Italics ours.)
 

 We, therefore, conclude that the district court for Sabine parish had exclusive and' unlimited jurisdiction to appoint a receiver for a partnership engaged in drilling and operating an oil and gas well on property situated in Sabine parish, and that such appointment cannot be collaterally attacked.
 

 This brings us to the consideration of the third and last contention of appellant
 
 *133
 
 Posey, i. e., as the seizing creditor of the oil lease held in indivisión by defendants Fargo and Hoeft, he is entitled to the funds in controversy as proceeds of the sale of the oil produced under said lease from the date of his levy on the lease to the date of the sale thereof. The judicial sale is not attacked and oil produced subsequent thereto is not involved.
 

 “The fruits of an immovable, gathered or produced while it is under seizure, are considered as making part thereof, and inure to the benefit of the person making the seizure.” Article 466, Rev.Civ.Code. (Italics ours.)
 

 In the case of Guíf Refining Co. of Louisiana v. Glassell et al., 186 La. 190, 171 So. 846, 848, we said: “On several occasions this court has decided that the usual oil and gas lease, with a cash or royalty consideration, or both, * * * is a contract of letting and hiring within the meaning of the codal articles, and therefore does not create a servitude on the realty or a real right in the land.” This case was cited with approval and followed' by the United States Circuit Court of Appeal (Fifth Circuit) in the case of Sabine Lumber Co. v. Broderick & Calvert, 88 F.(2d) 586, decided March 6, 1937.
 

 Article 475 of the Revised Civil Code provides that “all things corporeal or incorporeal, which have not the character of immovables by their nature or by the disposition of the law, according to the rules laid down in this title, are considered as movables.” And by article 471 of the Code it is provided that:
 

 “The following are considered as immovable from the object to which they apply:
 

 “The usufruct and use of immovable things.”
 

 But we also said in the case of Gulf Refining Company of Louisiana v. John Glassell, Jr., supra, that “oil and gas are fugitive minerals, and the owners of the lands which contain such deposits are not the owners of the oil and gas until they reduce these fugitive minerals to actual possession. The owners of land have a real right in their property to go upon it and explore it for these minerals, in order to gain ownership thereof by securing possession of them. * * * They may sell this real right separate from the fee of the realty, or reserve this real right when they sell the land, and, in both instances, a real right in the land' exists.
 
 They may lease this right to a third person who obtains thereby a personal right."
 
 (Italics ours.)
 

 In the case of Porche v. Bodin, 28 La. Ann. 761, it was held that:
 

 “It is true, article 465 of the Revised Code says that standing crops are considered as immovable and as part of the land to which they are attached, and article 466 declares that the fruits of an immovable gathered or produced while it is under seizure are considered as making part thereof, and inure to the benefit of the person making the seizure. But the evident meaning of these articles is, where the crops belong to the owner of the plantation, they form part o'f the immovable. * * *
 

 “A
 
 crop raised on leased premises in no sense forms part of the immovable. It be-.
 
 *135
 
 longs to the lessee, and may be sold by him, whether it be gathered or not, and may be sold by his judgment creditors.”
 

 This case has been cited with approval by this court in numerous decisions and particularly in the case of Lewis v. Klotz, 39 La. Ann. 259, 1 So. 539. See, also, Sandel v. Douglass, 27 La.Ann. 628.
 

 Rents and revenues of an immovable are included within the meaning and contemplation of the word “fruits” as used in article 466 (Lamorere v. Cox, 32 La.Ann. 1045) and it is immaterial whether the rental consideration be termed “royalty” rather than “rent” (Logan v. State Gravel Co., 158 La. 105, 103 So. 526), and the seizing creditor of the immovable, while the property is under seizure, is entitled to have the fruit thereof applied towards the satisfaction of his claim. Article 466, Rev.Civ.Code. But the seizing creditor, who seizes the debtor’s rights under the contract of lease of an immovable, in the case of a plantation, does not seize the portion of the crop produced under the contract of lease belonging to the lessee, and the same must be separately seized. Therefore, by the same parity of reasoning, in the case of a mineral lease, it is difficult to see under what theory the fugitive minerals, in which the owner of the real property has no rights until reduced to actual possession, could be considered the property of the lessee and be held to have been placed in custodia legis by the mere seizure of the lessee’s rights under the mineral lease.
 

 We, therefore, conclude that appellant Posey, as the seizing creditor of the defendants’ oil and gas lease, is not entitled to have considered as part of hi§ seizure the oil produced under the contract of lease while the lease was under seizure.
 

 We shall now consider the rights of appellant Gaunce, whose claim is based on a contract executed between him and G. K. Fargo and Edward F. Hoeft, on November 14,1933, and recorded in conveyance records of the parish of Sabine on February 12, 1934, the pertinent part of which reads as follows:
 

 “ * * * it is understood and agreed by • and between the said O. C. Gaunce, Assign- or, and the said G. K. Fargo and the said Edward F. Hoeft, Assignee, that as a further consideration for the assignment this day made to the said Fargo and Hoeft of an undivided one-half interest in and to the said A. J. Burkett oil and gas lease, the said G. K. Fargo and Edward F. Hoeft agree to pay to the said O. C. Gaunce in addition to the consideration recited in the assignment * * * the sum of Six Hundred & no/100 ($600.00) dollars out of oil produced and marketed from any well drilled on said land, the same to be paid out of Assignees’ undivided one^half interest in and to said oil and gas lease and any producing well drilled thereon, this payment to be made out of the first oil produced and going to the Assignee herein.”
 

 The foregoing stipulation is a mere evidence of debt, and the provisions that the same shall be paid out of “oil produced and marketed from any well drilled on said land” places a limitation on the obligation by designating the source of the funds from which to pay the claim, but does not have the effect of creating^ lien or privilege on the oil thus produced. Gaunce is, therefore,
 
 *137
 
 an ordinary creditor of the partnership and, as such, in so far as the fund's in controversy are concerned, is only entitled to a proper accounting thereof by the receiver.
 

 For the reasons assigned, the writs herein iss.ued are recalled and relators’ applications are denied, and the judgments of the district court and the Court of Appeal, First Circuit, are affirmed', at relators’ cost.
 

 O’NIELL, C, J., dissents, being of the opinion, first, that a joint venture for the drilling of an oil well is only a particular partnership, second, that the courts have no authority to appoint a receiver, instead of a liquidator, for a partnership, and, third, that the seizure of an oil and gas lease, where there is an oil or gas well in operation, and where the sheriff continues in the operation of the well under the authority of 'the court, constitutes a seizure of the oil or gas produced while the well Is operated by the sheriff.
 

 PONDER, J., recused.